1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LUANNE D. D.,[1]

               Plaintiff,

     v.

ANDREW M. SAUL, Commissioner of
Social Security,

             Defendant.

Case No. CV 19-08662 PVC

**MEMORANDUM DECISION AND ORDER**

     Luanne D. D. ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Commissioner" or "Agency") denying her application for Disability Insurance Benefits ("DIB").  The parties consented pursuant to 28 U.S.C. § 636(c) to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 11–13).  For the reasons stated below, the decision of the Commissioner is REVERSED, and this case is REMANDED for further administrative proceedings consistent with this decision.

---

    [1]   The Court partially redacts Plaintiff's name in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

I.

**PROCEDURAL HISTORY**

On February 6, 2012, Plaintiff protectively filed an application for DIB, pursuant to Title II of the Social Security Act (the "Act"), alleging a disability onset date of April 30, 2011. (AR 239, 278). The Commissioner denied Plaintiff's application initially and upon reconsideration, and thereafter an Administrative Law Judge ("ALJ") issued an unfavorable decision. (AR 20–33, 122–53). After the Appeals Council denied Plaintiff's request for review (AR 1–5), Plaintiff sought judicial review in this Court. *See Luanne D. D. v. Colvin*, No. 16 CV 0352 (C.D. Cal. filed Jan. 15, 2016). While the matter was on appeal, Plaintiff filed a supplemental application for Title II benefits. (AR 920–21).

On May 10, 2017, the Court issued an order reversing and remanding the matter for further proceedings. (AR 710–34, 741). Specifically, the Court found that the ALJ erred in his evaluation of the treating physician's opinion due to the illegibility of the treating physician's clinical notes. (AR 723–28). Further, because the ALJ's credibility analysis was impacted by the treating physician's illegible records, the Court ordered Plaintiff's credibility to be revisited on remand. (AR 731–33). Upon remand, the Appeals Council vacated the ALJ's decision and remanded the case to an ALJ for further proceedings consistent with this Court's April 2017 Order. (AR 744). The Appeals Council also directed the ALJ to consolidate the two claims files, associate the evidence, and issue a new decision on the consolidated claims. (AR 744).

The Commissioner denied the supplemental application initially and upon reconsideration. (AR 673–709). On November 20, 2018, and on April 18, 2019, Plaintiff, represented by counsel, appeared and testified at two hearings on the consolidated claims. (AR 601–37). The ALJ issued an adverse decision on June 13, 2019, finding that Plaintiff was not disabled because there were jobs that existed in significant numbers in the

national economy that she was capable of performing.  (AR 589–90).  Plaintiff did not file written exceptions with the Appeals Council, and the Appeals Council did not review the June 2019 adverse decision.[2]  This action followed on October 8, 2019.  (Dkt. No. 1).

## II.
## ISSUES PRESENTED

On appeal, Plaintiff raises four issues: (1) whether the ALJ erred in the evaluation of the opinion evidence; (2) whether the ALJ erred in assessing Plaintiff's credibility and symptom testimony; (3) whether the ALJ erred in the evaluation of the third party statements; and (4) whether the ALJ erred in the vocational analysis.  (Dkt. No. 20).

## III.
## DISCUSSION

### A.    <u>Standard of Review</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole."  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1097); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989)).

---

[2]    "[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on [the] case unless the Appeals Council assumes jurisdiction of the case."  20 C.F.R. § 404.984(a).

"Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  (*Id.*).  To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  *Aukland*, 257 F.3d at 1035 (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  *Reddick*, 157 F.3d at 720-21 (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).

### B.    The ALJ's Decision

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Act.  (AR 576–91).  At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity from April 30, 2011, the alleged onset date, through December 31, 2016, her date last insured.  (AR 579).  At step two, the ALJ found that through the date last insured, Plaintiff's fibromyalgia; pituitary tumor; healed fracture of the distal left fibular with malrotation and traumatic arthritis of the left ankle; sinus headaches; left knee arthritis and meniscal tear; asthma; obesity; major depressive disorder, mild/depressive disorder, not otherwise specified; and generalized anxiety disorder were severe impairments.[3]  (AR 579).  At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or

---

[3]    The ALJ also found that Plaintiff's medically determinable impairments of hypertension, hyperlipidemia, low back pain, gastroesophageal reflux disease (GERD), anemia, and right shoulder pain did not cause more than minimal limitations in her ability to perform basic work activities and were therefore nonsevere.  (AR 579).

combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations.[4]  (AR 579–81).

The ALJ then assessed Plaintiff's residual functional capacity (RFC) and concluded that through the date last insured, she could have performed light work as defined in 20 C.F.R. § 404.1567(b),[5] except:

> she can lift and carry twenty pounds occasionally and ten pounds frequently; she can sit for six hours in an 8-hour workday; she can stand and/or walk for two hours in an 8-hour workday; she can sit for forty to sixty minutes at one time; she can stand for fifteen to twenty minutes at one time; she can walk for fifteen to twenty minutes at one time; she can use her right and left hands frequently for all activities; she can frequently use her right foot, but only occasionally use her left foot; she cannot climb stairs, ramps, ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch, crawl, and balance; she must not work around heights or dangerous moving machinery; she must avoid more than occasional exposure to fames [*sic*], odors, dusts,

---

[4]   Specifically, ALJ considered whether Plaintiff met the criteria of Listings 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 3.03 (asthma), 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), or 14.09 (inflammatory arthritis) and concluded that she did not.  (AR 579–81).

[5]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

1    and pulmonary irritants, as well as extreme cold and vibration; and she is

2    capable of simple, repetitive tasks, consistent with unskilled work.

3

4    (AR 581).  At step four, the ALJ found that through the date last insured, Plaintiff was

5    unable to perform any past relevant work.  (AR 588–89).  Based on Plaintiff's RFC, age,

6    education, work experience, and the VE's testimony, the ALJ determined at step five that

7    through the date last insured, there were jobs that existed in significant numbers in the

8    national economy that Plaintiff could have performed, including production assembler,

9    bench assembler, information clerk, charge account clerk, table worker, and bench hand.

10   (AR 589–90).  Accordingly, the ALJ found that Plaintiff was not under a disability as

11   defined in the Act from April 30, 2011, the alleged onset date, through December 31,

12   2016, the date last insured.  (AR 590–91).

13

14       **C.**    **Analysis**

15

16           **1.**    **Plaintiff's Subjective Symptom Statements**

17

18          Plaintiff contends that the ALJ erred in assessing her credibility and her subjective

19   symptom statements.  (Dkt. No. 20 at 14–21).  She argues that the ALJ failed to provide

20   clear and convincing reasons for rejecting her testimony.  (*Id.* at 20).  The Court agrees.

21

22          On May 2, 2012, Plaintiff submitted an Adult Function Report.  (AR 299–306).

23   She reported trouble sleeping, maybe an hour or two most nights, and needs to get

24   additional rest during the day.  (AR 299).  She has insomnia from her depression and

25   chronic pain.  (AR 300).  She is able to take her dogs for short walks and does little

26   chores, like dishes, vacuuming, dusting, and making easy meals.  (AR 300–01).  Her

27   family helps with the shopping.  (AR 302).  In between her attempts to sleep, she paints,

28   reads, writes, and watches television.  (AR 299, 303).  Plaintiff asserts that her

impairments affect her ability to lift, squat, bend, stand, walk, sit, kneel, and climb.  (AR 304).  She can walk about one block before needing a 15- to 20-minute rest.  (AR 304). She also has difficulty with standing and sitting for very long in one position.  (AR 306).

On the same date, Plaintiff also submitted a Pain Questionnaire.  (AR 309–11). She reported severe headaches and chronic dull pain with occasional sharp twinges in her left leg from when she broke it in 2008.  (AR 309).  The pain is exacerbated by prolonged standing or walking.  (AR 309).  Medications provide only temporary relief and cause side effects, including headaches, heartburn, constipation, and high blood pressure.  (AR 309–10).  She is able to take short walks and drive her children to school, but she needs assistance to do chores and shop.  (AR 311).

On September 25, 2013, Plaintiff testified to constant pain stemming from a broken leg in 2008, which makes it difficult for her to ambulate.  (AR 92–93).  She has chronic debilitating headaches, "silent seizures" when she loses focus and concentration, asthma, and insomnia.  (AR 93–96, 105).  She is able to do some household chores but her family helps with cooking, laundry, and shopping.  (AR 102–03).  Plaintiff can walk 15- to 20-minutes and stand 10- to 15-minutes before needing to rest, and she can sit 45 minutes before needing to change positions.  (AR 105–06).

On April 13, 2016, Plaintiff submitted another Adult Function Report.  (AR 953–61).  She asserted chronic pain from her broken ankle/foot and widespread severe pain from her fibromyalgia.  (AR 953).  She also reported daily asthma attacks, recurrent headaches, increased depression, and occasional seizures.  (AR 953).  She was currently homeless and living in her car or on friends' couches.  (AR 954).  Her nighttime insomnia causes her try and sleep during the day.  (AR 954).  She has difficulty dressing herself and washing her hair.  (AR 954).  While she used to cook and do some other chores, her pain, weakness, exhaustion, and depression now prevent her from doing most activities.  (AR

955–56).  She is able to drive short distances but is afraid to be outside.  (AR 956–57).

She gets easily stressed and overwhelmed and has difficulty concentrating.  (AR 956–57).

In an Asthma Questionnaire completed the same day, Plaintiff reported that her asthma

causes weakness, fatigue, increased anxiety and panic, and insomnia.  (AR 951–52).

On November 20, 2018, Plaintiff testified to chronic constant pain, severe

headaches, and general weakness.  (AR 616–17, 621–22, 625–29).  The pain is

exacerbated by prolonged standing, walking, or sitting.  (AR 621–22).  Plaintiff also

experiences numbing and tingling in her fingers.  (AR 623).  She reported multiple side

effects from her medications.  (AR 619–20).  She also suffers from depression, anxiety,

and panic attacks.  (AR 632).

When assessing a claimant's credibility regarding subjective pain or intensity of

symptoms, the ALJ must engage in a two-step analysis.  *Trevizo v. Berryhill*, 871 F.3d

664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an

impairment that could reasonably produce the symptoms alleged.  *Garrison v. Colvin*, 759

F.3d 995, 1014 (9th Cir. 2014).  "In this analysis, the claimant is *not* required to show that

her impairment could reasonably be expected to cause the severity of the symptom she has

alleged; she need only show that it could reasonably have caused some degree of the

symptom."  *Id.* (emphasis in original) (citation omitted).  "Nor must a claimant produce

objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Id.*

(citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the

ALJ must provide specific, clear and convincing reasons for rejecting the claimant's

testimony about the symptom severity.  *Trevizo*, 871 F.3d at 678 (citation omitted); *see

also Smolen*, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding

the severity of her symptoms only if he makes specific findings stating clear and

1   convincing reasons for doing so."); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th

2   Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative

3   evidence thereof, he or she may only find an applicant not credible by making specific

4   findings as to credibility and stating clear and convincing reasons for each.").  "This is not

5   an easy requirement to meet: The clear and convincing standard is the most demanding

6   required in Social Security cases."  *Garrison*, 759 F.3d at 1015 (citation omitted).

7

8        Where the ALJ finds that a claimant suffers from a medically determinable

9   physical or mental impairment that could reasonably be expected to produce her alleged

10  symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to

11  determine the extent to which the symptoms limit an individual's ability to perform work-

12  related activities for an adult."  Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at

13  *3.[6]  SSR 16–3p superseded SSR 96–7p and eliminated the term "credibility" from the

14  Agency's sub-regulatory policy.  However, the Ninth Circuit has noted that SSR 16–3p

15

16        makes clear what [the Ninth Circuit's] precedent already required: that

17        assessments of an individual's testimony by an ALJ are designed to

18        "evaluate the intensity and persistence of symptoms after the ALJ finds that

19        the individual has a medically determinable impairment(s) that could

20        reasonably be expected to produce those symptoms, and not to delve into

21        wide-ranging scrutiny of the claimant's character and apparent truthfulness.

22

23  *Trevizo*, 871 F.3d at 679 n.5 (quoting SSR 16–3p) (alterations omitted).

24

25

26  ─────────────────

27        [6]   SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR
    16-3p, which became effective on March 28, 2016, was in effect at the time of the ALJ's

28  June 2019 decision.

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).  Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant.  *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms.  *Smolen*, 80 F.3d at 1284; *accord Burrell*, 775 F.3d at 1137.  However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); *see Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted).  Although an ALJ's interpretation of a claimant's testimony

1   may not be the only reasonable one, if it is supported by substantial evidence, "it is not

2   [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

3   2001).  Here, the ALJ found that Plaintiff's fibromyalgia; pituitary tumor; healed fracture

4   of the distal left fibular with malrotation and traumatic arthritis of the left ankle; sinus

5   headaches; left knee arthritis and meniscal tear; asthma; obesity; major depressive

6   disorder, mild/depressive disorder, not otherwise specified; and generalized anxiety

7   disorder were severe impairments (AR 579), and the ALJ made no finding of malingering.

8

9       The ALJ vaguely asserts that Plaintiff's subjective statements are inconsistent with

10   the objective medical evidence.  (AR 582–88).  However, once a claimant demonstrates

11   medical evidence of an underlying impairment, "an ALJ may not disregard a claimant's

12   testimony solely because it is not substantiated affirmatively by objective medical

13   evidence." *Trevizo*, 871 F.3d at 679; *see Stiles v. Astrue*, 256 F. App'x 994, 997 (9th Cir.

14   2007) ("an ALJ may not discredit the claimant's testimony as to the degree of her

15   subjective pain symptoms solely on the ground that they are unsupported by objective

16   evidence") (citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9,

17   1996)); *see also* SSR 16-3p, 2017 WL 5180304, at *7 ("We must consider whether an

18   individual's statements about the intensity, persistence, and limiting effects of his or her

19   symptoms are consistent with the medical signs and laboratory findings of record. . . .

20   However, we will not disregard an individual's statements about the intensity, persistence,

21   and limiting effects of symptoms solely because the objective medical evidence does not

22   substantiate the degree of impairment related-symptoms alleged by the individual.").

23   Further, the ALJ misapprehends the nature of Plaintiff's medically determinable

24   fibromyalgia impairment.  Fibromyalgia is "a rheumatic disease that causes inflammation

25   of the fibrous connective tissue components of muscles, tendons, ligaments, and other

26   tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  Typical symptoms

27   include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a

28   pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated

with this disease." *Id.* at 590.  However, those suffering from fibromyalgia have normal muscle strength, sensory functions, and reflexes.  *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017).  Because "there are no laboratory tests to confirm the diagnosis," fibromyalgia is assessed "*entirely on the basis of patients' reports of pain and other symptoms.*"  *Benecke*, 379 F.3d at 590 (emphasis added); *see Revels*, 874 F.3d at 657 (a "diagnosis of fibromyalgia does not rely on X-rays or MRIs").  The Agency recognizes that a person suffers from fibromyalgia if:

> (1) she has widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

*Revels*, 874 F.3d at 657 (quoting SSR 12-2p, at *3).  Furthermore, because the symptoms of fibromyalgia "wax and wane," "after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'"  *Id.* (quoting SSR 12-2p, at *6).

Plaintiff's fibromyalgia is well established by the record.  Plaintiff began treating with Wonil Lee, M.D., in July 2015.  (AR 1036).  Plaintiff presented with chronic fevers, diffuse pain, fatigue, and chronic sleeping dysfunction.  (AR 1038).  She also reported dry eyes, heartburn, constipation, muscle aches and weakness, joint pain, headaches, migraines, decreased concentrating abilities, and depression.  (AR 1038).  A psychiatric examination revealed poor insight, anxiety, and depression.  (AR 1038).  A physical examination revealed multiple tender points.  (AR 1039).  Because Plaintiff had "multiple

12

trigger point tenderness with fatigue and sleeping dysfunction," Dr. Lee, a board-certified rheumatologist,[7] found that Plaintiff "fulfills the 1990 and 2010 ACR criteria for fibromyalgia."[8]  (AR 1039).  In August 2015, Plaintiff complained of paresthesia in her left arm and difficulty sleeping.  (AR 1035).  Dr. Lee reviewed Plaintiff's medications and diagnosed primary fibromyalgia syndrome.  (AR 1035).  Plaintiff returned to Dr. Lee in December 2018, complaining of worsening symptoms, including chronic sleeping dysfunction, diffuse pain, and fatigue.  (AR 1237).  Other symptoms consistent with fibromyalgia included malaise, fluctuating weight, fever, night sweats, sinus pain, dry mouth, ringing in ears, abdominal pain, constipation, heartburn, change in urinary frequency, polydipsia, weakness, difficulty with balance, tingling, numbness, dizziness, memory loss, anxiety, depression, rashes, and itching.  (AR 1237); *see* SSR 12-2p, at *3 nn.3–4 (describing the signs, symptoms, and co-occurring conditions that are evidence of fibromyalgia).  Because of Plaintiff's diffuse pain, widespread trigger point tenderness, and nonrestorative sleep, Dr. Lee found that Plaintiff meets both the 1990 and 2010 ACR criteria for fibromyalgia.  (AR 1240).  He concluded that Plaintiff's symptoms are "clearly representative of severe fibromyalgia with multiple system involvement."  (AR 1240).  Further, throughout the relevant period, Plaintiff frequently complained to other medical providers of somatic symptoms that are associated with fibromyalgia, *see* SSR 12-2p, at *3 & nn.9–10, including headaches (AR 386, 388, 389, 515–16, 521, 530, 563, 566, 1059, 1072, 1100), depression and anxiety (AR 386, 446, 1053, 1073, 1085, 1101), abdominal pain (AR 388, 522, 1074), peripheral pain, weakness and numbness (AR 386, 388, 389, 43, 522, 527, 556, 1073, 1174), fatigue (AR 386, 392, 526), skin rashes (AR 487, 520, 523, 1074, 1109), insomnia (AR 446, 1053, 1101), cognitive issues (AR 497, 498, 567,

---

[7]     *See* Medical Board of California, Online License Search, available at <www.mbc.ca.gov/Breeze/License_Verification.aspx> (last visited July 1, 2020). "Rheumatology is the relevant specialty for fibromyalgia."  *Benecke*, 379 F.3d at 594 n.4.

[8]     A claimant that satisfies either the 1990 American College of Rheumatology (ACR) criteria or the 2010 ACR criteria can establish that she has a medically determinable impairment of fibromyalgia.  SSR 12-2p, at *2.

1053, 1073, 1101), and shortness of breath (AR 435, 515, 528, 563, 566, 1059, 1073, 1111, 1119, 1121, 1123).  Indeed, not only did the ALJ acknowledge that Plaintiff's fibromyalgia was a severe impairment, he also found that Plaintiff suffers from depression and anxiety (AR 579), which the Agency observes are co-occurring conditions indicative of fibromyalgia.  SSR 12-2p at *3 & n.10.

The ALJ erroneously discounts Plaintiff's subjective symptoms because of generally normal physical examinations.  (AR 582–87).  The ALJ emphasized, for example, that Dr. Lee "found no . . . abnormalities in her physical examinations" besides tender points.  (AR 585).  But there are currently no objective clinical tests to confirm the presence of fibromyalgia.  *See Revels*, 874 F.3d at 657; *Benecke*, 379 F.3d at 590. Instead, objective clinical tests are used to rule out *other* causes for a patient's symptoms.  *See* SSR 12-2p, at *3 (to properly diagnose fibromyalgia, a physician must provide "[e]vidence that other disorders that could cause the symptoms or signs were excluded"). "Therefore, it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs."  *Id.*  The ALJ also emphasized that Plaintiff was treated conservatively with medication and exercise and that there were gaps in her fibromyalgia treatment.  (AR 582, 584, 585).  A conservative course of treatment may discredit a claimant's allegations of disabling symptoms.  *See, e.g.*, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (treatment with over-the-counter pain medication is "conservative treatment" sufficient to discredit a claimant's testimony regarding allegedly disabling pain).  But the only treatment for fibromyalgia is medication and physical therapy. <https://www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785> (last visited July 2, 2020).  Throughout the relevant time period, Plaintiff was prescribed multiple pain relievers, including OxyContin and Norco and other strong opioid (narcotic) medications, to address her fibromyalgia symptoms.  (*See, e.g.*, AR 291, 309, 435, 940, 960, 988–89, 1010, 1034, 1074, 1240).  The consistent use of narcotic

medications cannot fairly be described as "conservative" treatment.  *See Revels*, 874 F.3d at 667 (fibromyalgia treatment consisting of a variety of prescription medications and steroid injections is not conservative); *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotics, occipital nerve blocks, and trigger point injections not conservative); *Christine G. v. Saul*, 402 F. Supp. 3d 913, 926 (C.D. Cal. 2019) ("Many courts have previously found that strong narcotic pain medications and spinal epidural injections are not considered to be 'conservative' treatment.") (collecting cases); *Aguilar v. Colvin*, No. CV 13-8307, 2014 WL 3557308, at *8 (C.D. Cal. July 18, 2014) ("It would be difficult to fault Plaintiff for overly conservative treatment when he has been prescribed strong narcotic pain medications."). Thus, because fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms," *Benecke*, 379 F.3d at 590, the lack of objective medical evidence is simply not relevant.

Finally, the ALJ erred in concluding that "[Plaintiff's] admitted daily activities are not limited to the extent expected given her complaints."  (AR 588).  "ALJs must be especially cautious in concluding that daily activities are inconsistent with [subjective symptom testimony], because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."  *Garrison*, 759 F.3d at 1016.  If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility.  *Id.*  "Though inconsistent daily activities may provide a justification for rejecting symptom testimony, the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability."  *Revels*, 874 F.3d at 667 (citation and alterations omitted); *see Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from her credibility as to her overall disability.") (citation and alterations omitted).  Indeed, a claimant "does not

need to be utterly incapacitated in order to be disabled." *Benecke*, 379 F.3d at 594 (citation omitted).  Here, the ALJ contends that contrary to Plaintiff's allegations in her function reports, she acknowledged to consultative examiners that she was independent for most activities of daily living.  (AR 582, 583, 586, 588).  In her testimony before the ALJ on September 25, 2013, as well as in her 2012–2013 function reports, Plaintiff consistently reported chronic pain, recurrent headaches, and an ability to walk, perform some chores, and shop *with help from others*, followed by rest breaks.  (AR 92–106, 299–306, 309–11).  This is entirely consistent with what she told consultative examiners during this time period.  (AR 447 (reporting to Curtis Edwards, Ph.D., in August 2012, that she despite physical limitations due to pain, she can prepare meals, complete chores, and run errands *with help*), 498 (reporting to Michael S. Wallack, M.D., in March 2013, that she does *some* cooking, cleaning, and shopping)).  However, by 2016–2018, Plaintiff's symptoms had steadily worsened to the point that while she was able to drive short distances, she had difficulty with personal grooming and was unable to shop, cook, or shop due to pain.  (AR 616–32, 953–61).  These impairments are consistent with what she told multiple consultative examiners during this period.  (AR 1053–54 (reporting to Stephan Simonian, M.D., in July 2016, that due to pain and depression, she is confused, cannot concentrate, cannot sleep, and has trouble with her memory), 1059–60 (reporting to Babak Tashakkor, M.D., in September 2016, that she has difficulty ambulating)).  While Plaintiff reported to Amber Ruddock, Ph.D., in July 2018, that she could perform activities of daily living without assistance (AR 1086), an isolated instance of "normal" functioning does not undermine the longitudinal record of debilitating fibromyalgia-related symptoms.  *Revels*, 874 F.3d at 657 (Because the symptoms of fibromyalgia "wax and wane," "after a claimant has established a diagnosis of fibromyalgia, an analysis of her RFC should consider 'a longitudinal record whenever possible.'") (quoting SSR 12-2p, at *6).  Indeed, the ALJ does not cite any other records indicating that Plaintiff was capable of routine activities of daily living without assistance.

1    In sum, despite acknowledging that Plaintiff's fibromyalgia is a severe, medically
2    determinable impairment, the ALJ failed to fully construe Plaintiff's subjective symptom
3    statements in light of fibromyalgia's unique and complex nature.  As the Ninth Circuit
4    recently observed in *Revels*: "In evaluating whether a claimant's residual functional
5    capacity renders them disabled because of fibromyalgia, the medical evidence must be
6    construed in light of fibromyalgia's unique symptoms and diagnostic methods . . . .  The
7    failure to do so is error, as is true here."  874 F.3d at 662.  Thus, the decision below failed
8    to provide clear and convincing reasons, supported by substantial evidence, for rejecting
9    Plaintiff's subjective symptom statements.[9]  The matter is remanded for further
10   proceedings.  On remand, the ALJ shall reevaluate Plaintiff's symptoms in accordance
11   with the current version of the Agency's regulations and guidelines, taking into account
12   the full range of medical evidence.

13
14
15
16

---

[9]    Similarly, the ALJ failed to provide germane reasons for rejecting the third-party statements.  (AR 588) (finding the third-party statements "unpersuasive for the same reasons that [Plaintiff's] own allegations do not fully persuade me as they lack substantial support from objective findings in the record").  "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).  To discount lay witness testimony, the ALJ "must give reasons that are germane to each witness."  *Id.* (citations omitted).  Because the ALJ has not properly rejected Plaintiff's subjective statements, he does not provide germane reasons for rejecting the third-party statements.  *Cf. Molina v. Astrue*, 674 F.3d 1104, 1114–20 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony"); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (if ALJ gave germane reasons for rejecting claimant's testimony, those reasons are equally germane to similar testimony by a lay witness).  On remand, the ALJ shall reevaluate the third-party statements in accordance with the current version of the Agency's regulations and guidelines, taking into account the full range of medical evidence.

1
2

## 2.      Treating Physicians

3      Plaintiff asserts that the ALJ erred in his evaluation of her treating physicians'

4   opinions.  (Dkt. No. 20 at 3–14).  Specifically, Plaintiff argues that the ALJ failed to take

5   into full account her fibromyalgia impairment when assessing the weight to be given the

6   opinions of Drs. Lee and Kroop.  (*Id.* at 13).  The Court agrees.

7

8      An ALJ must take into account all medical opinions of record.  20 C.F.R.

9   §§ 404.1527(b), 416.927(b).  The regulations "distinguish among the opinions of three

10   types of physicians: (1) those who treat the claimant (treating physicians); (2) those who

11   examine but do not treat the claimant (examining physicians); and (3) those who neither

12   examine nor treat the claimant (nonexamining physicians)."  *Lester*, 81 F.3d at 830.

13   "Generally, a treating physician's opinion carries more weight than an examining

14   physician's, and an examining physician's opinion carries more weight than a reviewing

15   [(nonexamining)] physician's."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir.

16   2001); *accord Garrison*, 759 F.3d at 1012.  "The weight afforded a non-examining

17   physician's testimony depends 'on the degree to which they provide supporting

18   explanations for their opinions.'"  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th

19   Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(3)).

20

21      The medical opinion of a claimant's treating physician is given "controlling

22   weight" so long as it "is well-supported by medically acceptable clinical and laboratory

23   diagnostic techniques and is not inconsistent with the other substantial evidence in [the

24   claimant's] case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "When a treating

25   doctor's opinion is not controlling, it is weighted according to factors such as the length of

26   the treatment relationship and the frequency of examination, the nature and extent of the

27   treatment relationship, supportability, and consistency with the record." *Revels*, 874 F.3d

28   at 654; *see also* 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).  Greater weight is

also given to the "opinion of a specialist about medical issues related to his or her area of specialty."  20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.*; *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion.").  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Trevizo*, 871 F.3d at 675 (citation omitted).  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  *Orn*, 495 F.3d at 632.

On December 6, 2018, Plaintiff presented with progressively worse fibromyalgia symptoms, including chronic sleep dysfunction, fatigue, malaise, night sweats, sinus pain, abdominal pain, constipation, difficulty with balance, tingling, numbness, dizziness, memory loss, anxiety, and depression.  (AR 1237).  Dr. Lee assessed diffuse pain, widespread trigger points, and nonrestorative sleep, and confirmed his severe fibromyalgia diagnosis.  (AR 1237, 1240).  He opined that Plaintiff is unable "to perform any gainful employment based on her baseline medical and mental status.  She is medically disabled.  I believe that her disability is permanent."  (AR 1240).  Because Dr. Lee's opinion was contradicted by the opinions of the consultative examiners and the State Agency physicians (AR 123–36, 138–53, 550–62, 673–90, 692–708, 1059–72, 1073–84), the ALJ was required to give specific and legitimate reasons that are supported

by substantial evidence in the record for rejecting Dr. Lee's opinion. *See Bayliss*, 427 F.3d at 1216; *Reddick*, 157 F.3d at 725. The ALJ's rejection of Dr. Lee's opinion does not satisfy these standards.

The ALJ rejected Dr. Lee's opinion because Plaintiff's "physical examination was normal." (AR 587). But a normal physical examination rules out *other* causes of Plaintiff's symptoms besides fibromyalgia, as discussed above. As the Agency admonishes ALJs, "it is common in cases involving [fibromyalgia] to find evidence of examinations and testing that *rule out other disorders* that could account for the person's symptoms and signs." SSR 12-2p, at *3 (emphasis added). Similarly, that Dr. Lee's opinion "is not based on any objective evidence" (AR 587) is not a legitimate reasons to discount a fibromyalgia diagnosis. Indeed, there are currently *no objective clinical tests* to confirm the presence of fibromyalgia. *See Revels*, 874 F.3d at 657; *Benecke*, 379 F.3d at 590. Instead, fibromyalgia is assessed "entirely on the basis of patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590. In assessing Plaintiff's rheumatic symptoms, Dr. Lee found multiple functional deficiencies that in combination are potentially debilitating, including fatigue, weakness, difficulty with balance, tingling, numbness, dizziness, memory loss, anxiety, depression, and chronic sleep disturbances. (AR 1237). While the ALJ may properly reject Dr. Lee's conclusion that Plaintiff is disabled and cannot work—as this is an issue reserved for the Commissioner, *see* 20 C.F.R. § 404.1527(d)(1); SSR 96-5p, at *2—the ALJ's reasoning for completely rejecting Dr. Lee's functional assessments is contrary to law and not supported by substantial evidence.

Dr. Lee's opinion is supported by the October 2013 opinion of Richard J. Kroop, M.D., Plaintiff's primary care physician. (AR 533, 1093). Dr. Kroop found that Plaintiff has constant pain and weakness, which radiates to all four limbs and is only minimally controlled with Norco and Ibuprofen. (AR 1093). Plaintiff has "intractable" headaches,

1   migraines, seizures, severe depression, and frequent anxiety attacks.  (AR 1093).

2   Plaintiff's neurological symptoms cause "a significant inability to grip or hold items in

3   either hand and cause[e] difficulty with hand writing."  (AR 1093).  These symptoms are

4   all consistent with a fibromyalgia diagnosis.  SSR 12-2p, at *2–3 & nn.9–10.  Because Dr.

5   Kroop's opinion was contradicted by the opinions of the consultative examiners and the

6   State Agency physicians (AR 123–36, 138–53, 550–62, 673–90, 692–708, 1059–72,

7   1073–84), the ALJ was required to give specific and legitimate reasons that are supported

8   by substantial evidence in the record for rejecting Dr. Kroop's opinion.  *See Bayliss*, 427

9   F.3d at 1216; *Reddick*, 157 F.3d at 725.  The ALJ's rejection of Dr. Kroop's opinion does

10  not satisfy these standards.

11

12       The ALJ gave Dr. Kroop's opinion "little probative value," concluding that they

13  are unsupported by objective or clinical evidence.  (AR 584).  However, as discussed

14  above, there are currently no objective clinical tests to confirm the presence of

15  fibromyalgia.  *Revels*, 874 F.3d at 657; *Benecke*, 379 F.3d at 590.  Thus, fibromyalgia is

16  assessed based entirely on a patient's subjective complaints.  *Benecke*, 379 F.3d at 590.

17  Here, Plaintiff frequently complained to Dr. Kroop of somatic symptoms that are

18  associated with fibromyalgia, including headaches, migraines, sinusitis, depression,

19  fatigue, and abdominal pain.  (AR 386, 388, 389, 392, 446, 497–498, 515–16, 521–22,

20  526–27, 530, 556, 563, 566).  The ALJ also rejected Dr. Kroop's opinion because of

21  "essentially conservative care."  (AR 584).  But, as noted above, the only treatment for

22  fibromyalgia is medication and physical therapy, and the consistent use of Norco and

23  other narcotic medications cannot fairly be described as "conservative" treatment.  *See*

24  *Revels*, 874 F.3d at 667.

25

26       In sum, the ALJ failed to provide specific and legitimate reasons supported by

27  substantial evidence for rejecting Drs. Lee's and Kroop's opinions.  On remand, the ALJ

28  shall reevaluate the weight to be afforded Drs. Lee's and Kroop's opinions in accordance

with the current version of the Agency's regulations and guidelines, taking into account the full range of medical evidence.[10]

### IV.
### CONCLUSION

Accordingly, IT IS ORDERED that Judgment be entered REVERSING the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision.  IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATE:  September 4, 2020

_____
PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

---

[10]   Plaintiff also argues that the ALJ erred in his vocational analysis.  (Dkt. No. 20 at 24–26).  She contends that in formulating her RFC, the ALJ failed to fully account for all the limitations evidenced in the record.  (*Id.* at 25).  However, it is unnecessary to reach Plaintiff's arguments on this ground, as the matter is remanded for the alternative reasons discussed at length in this Order.  Nevertheless, on remand, the Agency shall consider all relevant evidence in assessing Plaintiff's RFC and in deciding whether there were jobs that existed in significant numbers in the national economy that she was capable of performing.